**STATE of Tennessee, Appellee,**

v.

**Bill COPELAND and Grayland Darty, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

April 3, 1998.

David Brady, Public Defender, H. Marshall Judd, Asst. Public Defender, Cookeville, TN, for defendant Copeland.

Michael H. Knowlton, Cookeville, TN, for defendant Darty.

John Knox Walkup, Attorney General & Reporter, Lisa A. Naylor, Asst. Attorney General, Nashville, William E. Gibson, District Attorney General, Ben W. Fann, Lillie Ann Sells, Asst. District Attorneys General, Cookeville, TN, for Appellee.

## OPINION

PEAY, J.

The defendants were jointly indicted for selling over .5 grams of cocaine, delivering over .5 grams of cocaine, conspiring "to commit a felony, to wit: Cocaine over .5 grams," and conspiring to deliver over .5 grams of cocaine. Upon the defendants being tried together, the jury convicted Copeland of sell-ing over .5 grams of cocaine and conspiring to deliver over .5 grams of cocaine. It convicted Darty of conspiring to sell over .5 grams of cocaine. The jury acquitted the defendants of the remaining charges. On this direct appeal, both defendants contend as follows:

1. They should be granted a new trial because the State failed to provide them with exculpatory impeachment evidence;

2. Their conspiracy convictions are void as a matter of law;

3. The trial court erred by refusing to instruct the jury on casual exchange; and

4. They are entitled to a new trial because of improper prosecutorial argument.

Copeland additionally contends that he is entitled to a new trial because one of the State's witnesses committed perjury during her testimony, and that the evidence is insufficient to sustain his conviction for selling over .5 grams of cocaine. Upon our review of the record, we reverse each defendant's conspiracy conviction. We affirm the judgment below in all other respects.

## FACTS

On July 7, 1995, Officer Jerri Lynn Van-Hoosier of the Marion County Sheriff's Department, and Angela Burton, a confidential informant, drove together in Officer VanHoosier's car to an establishment called John's Place. When they arrived, they saw Darty standing outside. Burton yelled for Darty, he walked over to the car, and Burton "just asked him what was happening." Burton testified,

He came over to the car, and he said, 'Not much. What did you want?' And I told him that we wanted 2 grams. And he said, 'Well, it's according on who's in the car.' And he bent down and looked in the car. Then he said he would be back in a few minutes; and he walked around the car, walked into John's Place. In a few minutes he came back out with defendant Bill Copeland. Bill Copeland came around the back of the car, him and Mr. Darty together. And Mr. Darty was standing in behind

Bill Copeland. Bill Copeland took his left hand and put it down into the car and gave me two plastic bags with a rock in each. Officer VanHoosier then reached over me and gave Bill Copeland $200, and they both walked off together back around into John's.

The two women subsequently departed.

Officer VanHoosier's testimony echoed Burton's. Denise Buckner, the TBI agent who analyzed the "rocks" contained in the plastic bags, testified that they totaled 1.4 grams of cocaine base. The defendants put on no proof.

## ANALYSIS

■ We first address the defendants' contention that they are entitled to a new trial because the State failed to inform them that Burton had a criminal record. They argue that this evidence would have enabled them to impeach Burton and that the State's failure to inform them about it violated their due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We disagree.

■ In *Brady,* the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. Evidence favorable to an accused includes that which may be used to impeach the prosecution's witnesses. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v.*

*Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

■ In the joint hearing on the motions for new trial, Darty's attorney argued that the State had failed to provide him with a copy of Burton's criminal record. Apparently, Darty's lawyer researched this issue after the trial and informed the court at the hearing that Burton "had been found guilty of writing worthless checks, ... on 2/16/94 she wrote one worthless check ... for $82.00; on 6/29/95 she wrote a worthless check ... for $82.93; 6/29/95 a warrant was issued for writing a worthless check ... for $113.26; on 6/26/95 ... she was charged with one worthless check ...; on 6/29/95 ... she wrote a check ... for $84.20." [1] Clearly, this information was favorable to the defendants in that they would have been able to attack Burton's credibility on the basis of these convictions. However, we are confident that even vigorous cross-examination on this point would not have changed the result of the trial. First, defense counsel did attack Burton's credibility through establishing her role as a paid "snitch." More importantly, Officer VanHoosier's testimony about what happened on July 7, 1995, was almost identical to that of Burton's. The jury could have completely disregarded Burton's testimony and still had sufficient evidence with which to convict. Accordingly, this issue is without merit.

■ In a related issue, Copeland contends that Burton lied while under oath and that he is therefore entitled to a new trial. His argument rests upon the following portion of his lawyer's cross-examination of Burton at trial:

Q: What was the cause of you becoming a confidential informant?

A: I just offered my services.

Q: You weren't in trouble of any kind?

A: No, sir; I wasn't,

Q: You just offered your services?

1. The State contends in its brief that the defendants have waived this issue by failing to "offer any evidence to establish that Burton had a prior criminal record." At the hearing, however, the prosecuting attorney argued that he had not known about Burton's criminal record prior to trial, but acknowledged that the record referred

to by defense counsel was "right here with the Court. Anybody could get it. It's obvious that anyone could get it because he came up with it here and told us what it was." We find that the State has previously acknowledged the witness's prior criminal record in a manner sufficient for this Court to consider this issue on appeal.

A: Yes, sir.

Q: To assist the TBI? I mean, you didn't get out of any trouble or anything?

A: No, sir.

We agree with the court below that this testimony does not establish that Burton committed perjury while testifying. Defense counsel was questioning Burton as to why she became a confidential informant, not whether she had ever been convicted of a crime. Her prior criminal record does not establish that that was the reason she was cooperating with the TBI. Nor is there any proof in the record that any of the check charges were in any way affected by her work with the TBI. Finally, defense counsel's question, "You weren't in trouble of any kind?" refers, in context, to the time at which Burton decided to work as a confidential informant. The record does not demonstrate any causal link between her decision and her being charged with any crimes. That is, the record does not demonstrate that she was aware of any "trouble" at the time she became a confidential informant. In short, Copeland has failed to demonstrate that Burton committed perjury while testifying at his trial and this issue is therefore without merit.

 In their next issue, the defendants contend that their conspiracy convictions must be dismissed as a matter of law. Both of the defendants were charged with conspiring "to commit a felony, to wit: Cocaine over .5 grams," [2] and with conspiring to deliver over .5 grams of cocaine. No other actors were alleged to have been involved in these "conspiracies." Copeland was convicted of the delivery conspiracy but acquitted of the sale conspiracy; Darty was convicted of the sale conspiracy but acquitted of the delivery conspiracy. Every conspiracy, however, requires at least two actors: "The offense of conspiracy is committed if two (2) or more people, *each having the culpable mental state required for the offense which is the object of the conspiracy* and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which consti-

tutes such offense." T.C.A. § 39–12–103(a) (emphasis added). That is, every conspiracy is aimed at a particular offense and at least two people must have the requisite mental state for that particular offense. In this case, the particular offense of one conspiracy was [the sale of] over .5 grams of cocaine; the particular offense of the other conspiracy was the delivery of over .5 grams of cocaine. However, the jury determined that only *one* actor conspired to sell the cocaine, and only *one* actor conspired to deliver it. One actor does not a conspiracy make.

In *Delaney v. State*, 164 Tenn. 432, 51 S.W.2d 485 (1932), our Supreme Court considered two defendants charged with conspiring to commit murder. At trial, the State announced that it was proceeding only against Delaney: it presented his "co-conspirator" as a witness to testify that his "assent to Delaney's proposition was wholly feigned." 51 S.W.2d at 486. In finding Delaney's conviction void, our Supreme Court held, "It seems to have been an unbroken rule at common law, with cases on the point dating as early as A.D. 1410, that, when only two are charged with a conspiracy, and one of them is acquitted, the conviction of the other is void. We have found no dissent from this proposition." 51 S.W.2d at 487. This Court has recently recognized the continuing validity of the *Delaney* rule. In *State v. William Houston Otey, III*, No. 01C01–9201–CC00017, Williamson County, 1992 WL 217786 (Tenn.Crim.App. filed Sept. 11, 1992, at Nashville), this Court reversed a conspiracy conviction in which three persons had been charged with the conspiracy and two of them acquitted, holding that "[b]y definition, a conspiracy of one is no conspiracy at all." The same result obtains here. Accordingly, Darty's conviction for conspiring to sell over .5 grams of cocaine is reversed and dismissed. Likewise, Copeland's conviction for conspiring to deliver over .5 grams of cocaine is reversed and dismissed.

 The defendants next contend that the trial court erred when it refused to instruct the jury on casual exchange. Our

---

2. In light of our disposition of this matter, we will give the State the benefit of the doubt that this count of the indictment properly alleges a conspiracy for the *sale* of more than .5 grams of cocaine. We do not, however, address this issue on its merits.

Code provides that, "It is an offense for a person to knowingly possess or casually exchange a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." T.C.A. § 39–17–418(a). Except under certain limited circumstances, a casual exchange is a misdemeanor; hence, the defendants' desire to have had it charged to the jury.

■ The record does not reveal why the trial court refused the defendants' request. We agree with its decision, however. A "casual exchange" contemplates a spontaneous passing of a small amount of drugs, for instance, at a party. Money may or may not be involved. It does not contemplate the type of drug dealing made out in this case. *See State v. David Humphrey*, No. 01C01–9404–CR–00134, Sumner County, 1995 WL 50039(Tenn.Crim.App. filed Feb. 8, 1995, at Nashville) (State's proof that a confidential informant made two fifty dollar purchases of cocaine from the defendant established a "designed sale" and trial court's refusal to instruct on casual exchange was correct). This issue is without merit.

■ Both defendants next complain that the prosecutor made improper comments during closing argument about their election not to testify. Specifically, the State's attorney made the following remarks:

If you would for me for just a minute, I want you to think about an imaginary board here.

. . .

On one side of this imaginary chart we have the State's proof. The evidence that you're to weigh in this particular case. We've got the drugs.... There's no contest here that there's any mistake about where it came from or how much there is because you heard the lady from the lab testify that she weighed it and in this report that was passed to you told exactly how much was in here. So, the amount, the quantity, there's no—you've heard no testimony, have you, that contradicted how much drugs there was in here. So, there's no testimony on our imaginary chart. We've got the drugs. We've got the amount. We also put in the testimony of the people who were there, the two people who saw this drug transaction take place. Now, on the other side of the chart, you look at the defendants' proof and the evidence from there; and there is no evidence to contradict the State's case here. We have proven our case beyond a reasonable doubt.

The defendants argue that the prosecutor's comments about the lack of defense proof violated their constitutional right to remain silent, relying on this Court's opinion in *Roy Sisco v. State*, No. 79–9–III, Jackson County—No. 2530 (Tenn.Crim.App. filed Feb. 15, 1980, at Nashville).

In *Sisco*, the defendant was convicted of first-degree burglary based on the testimony of three accomplices, an identification in the area and at the time of the burglary, and the presence of some of the proceeds of the burglary at his place of employment. The defendant did not testify or, apparently, offer any other proof. During closing argument the prosecutor stated, "I am listening for a witness that contradicted the testimony of these boys that said, 'We was all together and did it.' Who denied it? Who contradicted what they told you? I don't hear any contradiction." This Court noted that, in making these comments, the prosecutor could have been referring only to the defendant, which amounted to a direct comment on the defendant's failure to testify. The prosecutor did not stop there, however. Later in his summation he stated, "This defendant is the oldest one [of the four accused of committing this burglary]. And perhaps the wisest one. Are you going to turn him loose because he didn't plead guilty? Because he didn't confess to it and the others did?" In addition to these comments, one of the State's witnesses was allowed to testify that the defendant had remained silent at the time of his arrest.

In considering all of these problems, this Court found that "the doctrine of fairness demands that we take the entire record into account in determining whether the Fifth Amendment violation has affected the outcome of the trial. We cannot say with cer-

tainty that it did [sic], despite the trial court's later instruction on the defendant's right not to testify, and we must, of course, resolve any doubt in the defendant's favor." Accordingly, the defendant's judgment of conviction was reversed and the case was remanded for a new trial.

 The case before us is distinguishable. There was no direct comment here about the defendants' decision not to testify, nor were there other gross improprieties of the type committed in the *Sisco* case. As noted by the trial court upon overruling the defendants' joint motion for mistrial on this ground, "The fact that the proof is uncontradicted may be commented on.... A more direct reference to the defendant not testifying might result in a mistrial, but in this instance that's not necessary." We agree. *See, e.g., State v. Livingston,* 607 S.W.2d 489, 492 (Tenn.Crim.App.1980) (prosecutor's comment that no proof whatsoever was presented by the defendant was not a comment on the defendant's failure to testify). However, we will note once again that

> Remarks which skirt the edges of impermissible comment are neither desirable nor worth the risk of reversal of what may well be a thoroughly deserved conviction. Caution is desirable until the constitutional boundaries of permissible comment on the state of the evidence when the accused does not testify are thoroughly established. In the meantime the sensible course is to assume that jurors can see as well as hear, and do not have to be told when evidence is uncontradicted.

*Taylor v. State,* 582 S.W.2d 98, 101 (Tenn. Crim.App.1979) *quoting State v. Dent,* 51 N.J. 428, 241 A.2d 833, 840–41 (N.J.1968). This issue is without merit.

 Finally, we address Copeland's contention that the evidence is not sufficient to sustain his conviction for the sale of over .5 grams of cocaine. A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her

case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982).

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

 Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Cabbage,* 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973).

The proof established that Copeland came out of John's Place with Darty, handed two clear plastic bags containing a "rock" each to Burton, and took two hundred dollars from VanHoosier. Copeland argues that this evidence does not establish that he knew the substance he was selling was a controlled substance as required by the statute.[3] He argues, "What if Darty told [him] that the package contained marijuana, stolen jewelry or in some other manner deceived [him] as to what he was taking to the undercover officer?" We are unpersuaded. VanHoosier

---

**3.** "It is an offense for a defendant to knowingly: Sell a controlled substance." T.C.A. § 39–17– 417(a)(3).

testified that the plastic bags in question were clear: Copeland could therefore see what was in them. The evidence was sufficient for the jury to infer that Copeland knew what he was selling, and this issue is therefore without merit.

In conclusion, we reverse and dismiss Darty's conviction of conspiracy to sell more than .5 grams of cocaine, and reverse and dismiss Copeland's conviction of conspiracy to deliver more than .5 grams of cocaine. The judgment below is otherwise affirmed.

WELLS AND SMITH, JJ., concur.