IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 12, 2002 Session

## STATE OF TENNESSEE v. TIMOTHY WAYNE GRIMES

**Appeal from the Circuit Court for Dickson County**
**No. CR4681     Robert Burch, Judge**

---

**No. M2001-01460-CCA-R3-CD - Filed October 16, 2002**

---

A Dickson County Circuit Court jury convicted the defendant, Timothy Wayne Grimes, of possession of a Schedule IV controlled substance with intent to deliver, a Class D felony, and the trial court sentenced him as a Range III, persistent offender to eight years in a community corrections program. The defendant appeals, claiming that the trial court erred by failing to instruct the jury as to the lesser included offenses of simple possession and casual exchange. We conclude that the trial court erred by failing to instruct the jury regarding simple possession of the controlled substance. Although we hold that casual exchange is not a lesser included offense of possession with intent to deliver, we also conclude that the trial court should have instructed the jury regarding the casual exchange inference provided in Tenn. Code Ann. § 39-17-419. We reverse the judgment of conviction and remand the case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed, Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Jerred A. Creasy, Charlotte, Tennessee, for the appellant, Timothy Wayne Grimes.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Suzanne M. Lockert, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's passing a Clonazepam pill to a fellow inmate in the Dickson County Jail on July 13, 1999. Susan Shepard, a pharmacist, testified that the jail used her pharmacy to fill prescriptions for inmates. She said that in April 1999, a doctor prescribed Clonazepam to the defendant and that the pharmacy filled the prescription. She said that between April and July 1999, the pharmacy refilled the defendant's prescription several times. She said that

each time the pharmacy refilled the prescription, it gave the Clonazepam pills to a jail representative. She said that jail officers were supposed to dispense the drug to the defendant. She said that she did not know how often officers gave Clonazepam pills to the defendant but that he was supposed to take a pill two or three times a day. She said that Clonazepam was used to treat anxiety and nervousness and that Clonazepam pills were round and green.

Patricia Corlew testified that in July 1999, she was a trusty in the Dickson County Jail and that she often worked in the jail's laundry room with another trusty, Rebecca Jackson. She said that on July 13, she was working alone in the laundry room because Ms. Jackson had been put into lockdown. She said that she received a laundry bag with the defendant's name on it and that when she took the defendant's clothes out of the bag to wash them, she found a sealed envelope addressed to "Becky." She said that she noticed something inside of the envelope and that she asked Sergeant Bonita Baugh to come to the laundry room. She said she never saw what was inside of the envelope. She said that although the defendant had put notes in his laundry bag before, this was the first time she had seen something suspicious in the bag. She said that sometime before July 13, she heard the defendant tell Ms. Jackson that "he could get her what she wanted" and that he had "some pills and stuff that he could give her." She said that she was testifying voluntarily and that she had not been promised anything in return for her testimony.

On cross-examination, Ms. Corlew testified that jail officers brought the inmates' laundry bags directly from the jail cells to the laundry room. She said she did not know whether the defendant had a cellmate on July 13. She said that at the time of the incident in question, she was in jail for three felony sale of cocaine convictions and that she had a prior conviction for passing a worthless check.

Sergeant Bonita Baugh testified that she worked at the Dickson County Jail and that on July 13, 1999, Patricia Corlew asked her to come to the laundry room. She said that she went into the laundry room and saw a sealed envelope. She said that she opened the envelope and found a letter and a baggie that contained a green pill. She said that she was familiar with the defendant's handwriting and that the defendant had written the letter. She said that the defendant was known by the nickname "Baldhead" and that the letter had been signed "BH." She said she took the envelope, the letter, and the pill to her lieutenant.

Sergeant Baugh testified that on July 13, Rebecca Jackson was on lockdown status and was not working with Ms. Corlew in the laundry room. She identified the defendant's medication records, which showed that between July 11 and August 16, 1999, jail officers had dispensed Clonazepam to him. She said that after an officer dispensed medication to an inmate, the officer was supposed to watch the inmate swallow the medicine. She said, though, that officers had problems with inmates not swallowing their medication and that she did not know whether the defendant had swallowed every pill he received.

On cross-examination, Sergeant Baugh testified that inmates could refuse to take their medication and that sometimes the defendant refused to take his Clonazepam pill from her. She said

that she had never known the defendant to hold a pill in his mouth and not swallow it. She said that on July 12, Rebecca Jackson had been placed on lockdown status for receiving Clonazepam from Ronald Hasley, another jail inmate.

Rebecca Jackson testified that in July 1999, she was an inmate at the Dickson County Jail. She said that she knew the defendant and that she had talked to him a couple of times when he walked by the laundry room where she was working. She said that another inmate told her that the defendant had Clonazepam and that she asked the defendant to give her a pill. She said that in return for the pill, she gave the defendant cigarettes. She said that the defendant wanted her to call him "Baldhead" and that he sent letters and pills to her in his laundry bag. She said that when the defendant sent letters to her, he usually addressed them to "Becky." She said she paid for the Clonazepam pills by sending the defendant sexually explicit letters and women's underwear. She said the defendant did not ask her for cash.

Ms. Jackson testified that on July 13, 1999, she was not working in the laundry room because she was in a lockdown cell. She said she was familiar with the defendant's handwriting, and she identified the July 13 letter as having been written by him. Ms. Jackson then read the portions of the letter to the jury, stating:

> And like I said, don't get me caught. Becky, remember what I told you, don't send no messages to me by the Rock Man. The reason why I say that, because too many people know what's going on about this. Will get back to the police. When I send out my clothes, it will be by one of the guys on my side. Also, Becky, I told you last week that I was going to make it worth your while. And I am, trust me. I was going to do it this morning, but that s--- happened last night. Becky, I have been sleeping like a baby. I wish the two of us could get together. Becky, do you know what I get for them, five (5) bucks apiece. So, you're a lucky woman and I like you, but don't take advantage of that. Also, I get twenty-one (21) of them a week, so I run a business with them.
>
> . . . .
>
> Becky, tell me something about them green things, because I don't use them. Yesterday was a have-to call.
>
> . . . .
>
> You take care of me and I will take care of you. I usually keep smokes. I will have plenty this weekend. You tell Michelle that I'm being good to you. . . . Going to close for now. Don't forget, a hot letter, smokes, a pair of your panties after you wear them. I will take

care of the smokes this weekend. And then what I gave you is for being real, and I like that about you. Remember this: Be good to me and I will be good to you. Stay sweet and keep up your good looks. I have a pair of yours or Pat's socks that was in my clothes Friday. I will send them back to you-all. Becky, we are not going to let anybody know about this, are we. I've been busted before, but I beat the charges. I'm trusting you. . . .

In addition, the letter contained the following statements: "Becky make sure you send me another pack of smokes[.] I will send them back this weekend, but this right here is because I said I was going to hook you up so here it is." In a postscript to the letter, the defendant wrote, "I got the weekender[s] to take care of and that's business but you [won't] be forgotten."

On cross-examination, Ms. Jackson acknowledged having prior convictions for theft, forgery, and passing a forged check. She acknowledged that the July 13 letter did not specifically mention Clonazepam, that she never saw the defendant write the letter, and that she did not know for a fact that the defendant was the person who sent her Clonazepam on July 13. She said the defendant never physically gave her any pills, and she acknowledged that she was never prosecuted for receiving pills from him. She acknowledged that on July 11, two days before the incident in question, officers searched the jail after someone allegedly took medicine from a medicine cart. She said that the next day, July 12, a jail officer caught her receiving a Clonazepam pill from Ronald Hasley and that she was put in lockdown for one week. She said she thought that Ronald Hasley was the Rock Man mentioned in the letter and that he got the pill from the defendant.

Lieutenant Tom Lane from the Dickson County Jail testified that he oversaw jail operations. He acknowledged that on July 13, 1999, he took custody of an envelope that contained a green pill and a letter. He said that he was familiar with the defendant's handwriting and that the defendant wrote the letter. He said that on July 17, jail officers searched the Dickson County Jail with a drug dog but found no drugs. He said that the defendant's cellmate, Jodie Cole, told jail officers that the defendant had given Mr. Cole drugs to hold during the search. An incident report then was introduced into evidence. According to the report, Jodie Cole accused the defendant of assaulting him after the pills Mr. Cole had been holding for the defendant turned up missing. Lieutenant Lane said that it was easy for inmates to hide drugs and that inmates could hold medicine in their mouths without swallowing it. He said that the defendant had no right to have Clonazepam in his jail cell on July 13.

On cross-examination, Lieutenant Lane testified that he had no knowledge of the defendant not swallowing Clonazepam pills and that he never saw the defendant pass Clonazepam to another inmate. He said that although the defendant had the nickname "Baldhead," the defendant had never sent him any correspondence signed with that name or "BH." He acknowledged that he never asked the district attorney to prosecute Rebecca Jackson or Ronald Hasley for passing Clonazepam.

-4-

The defense called Captain Mack Bruce, the Chief Jailer at the Dickson County Sheriff's Department, who testified that from April to August 1999, a nurse was not on staff to dispense medicine to jail inmates. He said he had no knowledge of the defendant holding a pill in his mouth and not swallowing it. He said that during a search of the jail cells, he did not find any drugs that could be attributed to the defendant.

On cross-examination, Captain Bruce testified that he was familiar with the defendant's handwriting and that the defendant wrote the July 13 letter. He acknowledged that there were plenty of places where an inmate could hide drugs and that it was not unusual not to find drugs on an inmate during a search. He said that when giving inmates their medication, jailer officers followed a prescription's directions but that an officer could not force an inmate to take the medicine. He acknowledged that he had known inmates to hold pills in their mouths and not swallow them. The jury found the defendant guilty of possession of a controlled substance with intent to deliver.

The defendant contends that the trial court erred by failing to instruct the jury on the lesser included offenses of simple possession and casual exchange. The state responds that although simple possession and casual exchange are lesser included offenses of possession with attempt to deliver, the evidence in this case did not support instructions as to those offenses. We conclude that the trial court should have instructed the jury as to the lesser included offense of simple possession. We also conclude that casual exchange is not a lesser included offense of possession with intent to deliver but that the trial court erred in failing to charge the jury on the casual exchange inference set forth in Tenn. Code Ann. § 39-17-419. In fact, the trial court should have instructed the jury relative to simple possession; the inference of casual exchange; and, perhaps, the significance of a valid prescription if the casual exchange inference were made by the jury.

We note that although the defendant did not request instructions on lesser included offenses at trial, he did raise the issue in his motion for new trial. In its ruling, the trial court said, "I think without a question it would have been better to have charged the lesser-included offenses of simple possession and casual exchange just out of [an abundance] of caution." However, the trial court denied the defendant's motion, stating:

> The pill was found with the letter, the letter describing his, essentially, drug trafficking activities. This was part of his activities. It was no casual exchange, couldn't be by the terms of the letter. Obviously, it's not simple possession, because he - - by the terms of the letter - - he was asking to exchange for something.

Our supreme court has held that an offense is a lesser included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

> (1) a different mental state indicating a lesser kind of culpability; and/or

> (2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999). If an offense is a lesser included offense, then the trial court must conduct the following two-step analysis in order to determine whether the lesser included offense instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469. "As a general rule, evidence sufficient to warrant an instruction on the greater offense also will support an instruction on a lesser offense under part (a) of the Burns test." State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002).

If a trial court improperly omits a lesser included offense instruction, then constitutional harmless error analysis applies and this court must determine if, beyond a reasonable doubt, the error did not affect the outcome of the trial. State v. Ely, 48 S.W.3d 710, 725 (Tenn. 2001). "In making

this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." Allen, 69 S.W.3d at 191.

According to Tenn. Code Ann. 39-17-417(a)(4), it is an offense for a defendant knowingly to possess "a controlled substance with intent to . . . deliver . . . such controlled substance." Simple possession and casual exchange are set forth in the same statute, which provides that it is an offense "for a person to knowingly possess or casually exchange a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription." Tenn. Code Ann. § 39-17-418(a).

Under part (a) of the Burns test, simple possession is a lesser included offense of possession with intent to deliver. Therefore, using the rationale in Allen, we conclude that the trial court should have instructed the jury on simple possession. Pursuant to Tenn. Code Ann. § 40-18-110(a) (amended 2001), in effect at the time of trial, the trial court was obligated to instruct the jury even without request. Moreover, such an instruction was the constitutional right of the defendant. See Ely, 48 S.W.3d at 727.

Under part (a) of the Burns test, we conclude that casual exchange is not a lesser included offense of possession with intent to deliver because it contains the additional element of an exchange. And we do not believe that casual exchange is a lesser included offense under part (b) of Burns. See generally State v. Grady Paul Gatlin, No. M2000-02356-CCA-R3-CD, Marshall County (Tenn. Crim. App. Sept. 25, 2001) (Witt, J., concurring and dissenting, and Riley, J., dissenting) (concluding that casual exchange is not a lesser included offense of possession with intent to sell). Therefore, we conclude that the trial court did not err by failing to charge the jury on casual exchange as an offense.

Nevertheless, we believe that the trial court should have instructed the jury as to the casual exchange inference set forth in Tenn. Code Ann. § 39-17-419, which provides:

> It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). Such inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider such inferences along with the nature of the substance possessed when affixing the penalty.

Although the trial court stated that the letter proved that the defendant was using the pills to run a business and that the defendant sold the pill to Ms. Jackson as part of the business, we believe the letter contains statements indicating a casual exchange. For example, in the letter, the defendant told Ms. Jackson that he was running a business with the pills but that "you [won't] be forgotten." In addition, although the defendant asked Ms. Jackson to send him a pack of cigarettes, he then stated,

-7-

"[But] this right here is because I said I was going to hook you up so here it is."  Moreover, the fact that the defendant may have exchanged the pill for underwear or cigarettes, does not preclude a casual exchange. See State v. Copeland, 983 S.W.2d 703, 708 (Tenn. Crim. App. 1998) (holding that a casual exchange "contemplates a spontaneous passing of a small amount of drugs, for instance, at a party," and money may be involved).  We believe that the jury could have reasonably inferred from these statements that the defendant and Ms. Jackson were friends, that his sending her the pill on July 13 was not a part of his business, and that he did not have the felonious intent to deliver it.

If the jury were to make an inference of casual exchange, the defendant would only be subject to a conviction for simple possession.  We conclude that under the circumstances and as required by Tenn. Code Ann. § 39-17-119, the trial court should have instructed the jury as to the casual exchange inference, regardless of no request being made.

We also believe that the evidence potentially brings into play the valid prescription exception to the offense of simple possession.  As previously stated, Tenn. Code Ann. § 39-17-418(a) provides a valid prescription exception by which a defendant having a valid prescription for the possessed or exchanged drug cannot be convicted of those offenses.  In the present case, a pharmacist testified that the defendant obtained Clonazepam pursuant to a prescription.  The state acknowledged that the defendant had a prescription.  The prescription exception is applicable "when the prescription is issued by a licensed practitioner, acting in good faith and in accord with accepted medical standards and when the person obtaining the prescription is also acting in good faith and is free from fraud, deceit or misrepresentation." State v. Sanderson, 550 S.W.2d 236, 239 (Tenn. 1977); see also Tenn. Code Ann. § 39-11-202 (providing that the defendant has the burden of proving an exception by a preponderance of the evidence).  In this respect, proof  by a preponderance of the evidence that the defendant possessed a valid prescription for Clonazepam would exonerate him if the casual exchange inference were made.

Given the relationship of the offense of simple possession and the casual exchange inference, we cannot say under the evidence in this case that the failure to instruct the jury regarding the offense and inference was harmless beyond a reasonable doubt.  Accordingly, we reverse the judgment of conviction and remand the case for a new trial.

_____
JOSEPH M. TIPTON, JUDGE