# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 9, 2012

## STATE OF TENNESSEE v. ARTHUR LEE JAMISON, JR.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2010-A-473      Cheryl A. Blackburn, Judge**

**No. M2012-00184-CCA-R3-CD - Filed February 6, 2013**

The appellant, Arthur Lee Jamison, Jr., was convicted by a jury in the Davidson County Criminal Court of selling less than .5 grams of a substance containing cocaine within 1,000 feet of a drug-free school zone, a Class B felony. The trial court sentenced the appellant to ten years in the Tennessee Department of Correction. On appeal, the appellant challenges the sufficiency of the evidence sustaining his conviction. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

James O. Martin, III (on appeal) and Karl Pulley (at trial), Nashville, Tennessee, for the appellant, Arthur Lee Jamison, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter, Sophia S. Lee, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At trial, Officer Josh Walters of the Metropolitan Nashville Police Department (Metro) testified that in October 2009, he was working with the Crime Suppression Unit which enforced street level crimes such as narcotics dealing and prostitution. He stated that he often performed undercover drug purchases. Officer Walters said that to perform undercover drug purchases, he had grown a beard, had longer hair, wore dirty clothes, and

tried to look like a "street person." He said that while he worked undercover, he was equipped with a listening device so detectives who were following him could monitor events visually and audibly to ensure his safety and to make an arrest after a transaction was complete.

Officer Walters stated that on October 28, 2009, he was driving a "buy car," which was an older model, unmarked car that was designed to "blend in" and look like a vehicle a drug user would drive. He drove in areas of suspected drug activity. When Officer Walters drove by the intersection of Murfreesboro Road and Paris Avenue, he saw the appellant standing on the corner. Officer Walters pulled his car up beside the appellant and asked, "[H]ey, have you got a ten," which meant he wanted $10 worth of crack cocaine. Officer Walters stated that "a ten" generally weighed .1 to .2 grams and could get a user high for approximately thirty minutes. The appellant indicated yes and got in the passenger seat of Officer Walters' car.

The appellant instructed Officer Walters to drive to the Shell station on Lafayette Street. When they parked, the appellant asked Officer Walters for $10 because he intended to go into the store to exchange the money, which indicated to Officer Walters that the appellant was familiar with the police practice of buying drugs with previously photocopied money. Officer Walters refused the appellant's request, telling him that he did not want to give the appellant money without first seeing the drugs.

At that point, the appellant told Officer Walters to drive to another area. While they traveled, the appellant constantly looked in the side and rear-view mirrors. The appellant had Officer Walters park on the side of the road at the corner of Robertson Street and Fairfield Avenue. When Officer Walters parked the vehicle, he could see Napier Elementary School. The appellant made a call on his cellular telephone and told the person who answered, "I need a dime," which was slang for $10 worth of crack cocaine. After the call, the appellant instructed Officer Walters to drive to the corner of Claiborne Street and Lafayette Street.

When they arrived, the appellant told Officer Walters to give him a $10 bill. The appellant left his cellular telephone with Officer Walters as collateral and went into a residence at 522 Claiborne Street, which was located within 1,000 feet of Cameron Middle School. Five minutes later, the appellant exited the residence, got in the car, and told Officer Walters that he could not get the drugs because "he saw the vice out." Officer Walters told the appellant to return his money. The appellant handed him a "wadded up" bill. Officer Walters "uncrumpled" the bill and saw that it was a $1 bill, not a $10 bill. Officer Walters accused the appellant of trying to "rip [him] off," and the appellant said, "[M]an, I got it, I got it, just go." The appellant directed Officer Walters toward the intersection of Lafayette Street and Wharf Avenue. While Officer Walters was driving, he saw the appellant get out

a small piece of paper. When the appellant opened the paper, Officer Walters saw rocks of crack cocaine inside.

The appellant told Officer Walters to stop at 1st Avenue and Chestnut Street, which was located within 1,000 feet of Johnson School and Cameron Middle School. The appellant handed Officer Walters the rocks of crack cocaine, and Officer Walters gave the takedown signal. Within seconds, other officers arrived and arrested the appellant. Officer Walters said that Detective Khanthasith Phothirath field tested the rocks and confirmed that they contained cocaine. Afterward, Detective Dills submitted the rocks to the evidence lockup at Metro. Officer Walters also took the appellant's cellular telephone as evidence. Officer Walters said that police never recovered the $10 bill he used as buy money.

On cross-examination, Officer Walters acknowledged that when he first encountered the appellant, he was not in a school zone. He further acknowledged that he initiated the transaction, not the appellant. Officer Walters explained that "[t]he only reason [the appellant] was targeted is because of that location and our history with the crime there." Officer Walters stated that the transaction was not recorded. He said that at the Shell station, he thought there was a possibility that the appellant was trying to "rip [him] off" by taking his money without giving him drugs in return. Officer Walters stated that he did not search the appellant and did not see him with drug paraphernalia.

Metro Detective Jacob Pilarski testified that on October 28, 2009, he was a member of the takedown team that was following and monitoring Officer Walters while he made undercover drug buys. Detective Pilarski said they were working around the intersection of Murfreesboro Road and Paris Avenue, which was known for narcotics sales.

Detective Pilarski stated that the appellant was standing on the side of the road in the area, and Officer Walters asked him for "a dime or a ten," an amount commonly purchased for personal use. The appellant got into Officer Walters' vehicle and said, "I can get you what you need." He directed Officer Walters to a Shell gas station and asked for the money. Detective Pilarski explained that frequently people try to get money and leave without providing drugs. However, Officer Walters refused to give the appellant money until he obtained the crack cocaine. The appellant relented and told Officer Walters to drive to Robertson Street and Fairfield Avenue so he could make a call. Detective Pilarski said that the takedown team moved closer "because it seemed like he was just trying to get the money and run."

Detective Pilarski overheard the appellant make a call and ask for "a ten." The appellant then directed Officer Walters to 522 Claiborne Street. The appellant walked away then returned and informed Officer Walters that he could not get the drugs. The appellant

gave Officer Walters something, and Detective Pilarski heard Officer Walters say, "[T]hat's not [a] ten, that's a one." The appellant capitulated, telling Officer Walters, "I got it, just drive." Following the appellant's directions, Officer Walters stopped near 1st Avenue and Chestnut Street. Thereafter, Officer Walters gave the takedown signal, and the takedown team took the appellant into custody.

On cross-examination, Detective Pilarski said that the unit is normally comprised of six or seven people. Detective Pilarski acknowledged that Officer Walters initiated contact with the appellant, which was "very typical of street level narcotics." He recalled that the transaction occurred around 9:00 p.m. Detective Pilarski stated that at 522 Claiborne Street, he saw someone peeking out of the back door. He also saw someone else enter then exit the residence. Detective Pilarski never saw the appellant exchange anything with anyone.

Isaac Martinez testified that he was employed in the Property and Evidence Division of Metro and that the rocks of crack cocaine and the appellant's cellular telephone were submitted to the property room after the appellant's arrest. Martinez delivered the drugs to the Tennessee Bureau of Investigation (TBI) for testing. Afterward, the drugs were returned to the Metro property room.

Agent Laura Adams, a forensic scientist with the TBI, testified that she tested the rock-like substances and determined that the rocks weighed .03 grams and were cocaine base, which was a "smokable form of cocaine." She stated that cocaine was a Schedule II substance.

The appellant did not testify or present proof in his defense.

The jury found the appellant guilty of selling less than .5 grams of a substance containing cocaine within 1,000 feet of a drug-free school zone. He was sentenced as a Range I, standard offender to ten years, eight years of which were to be served at 100%. On appeal, the appellant challenges the sufficiency of the evidence supporting his conviction.

## II. Analysis

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The appellant argues that no reasonable jury could have found him guilty of selling crack cocaine beyond a reasonable doubt. He maintains that, at most, he was guilty of casual exchange.

Our criminal code provides that it is a Class C felony for a defendant to knowingly sell less than .5 grams of cocaine, a Schedule II controlled substance. Tenn. Code Ann. § 39-17-417(a)(3) and (c)(2)(A). However, if the transaction occurs within 1,000 feet of a school zone, it is a Class B felony. See Tenn. Code Ann. § 39-17-432(b)(1). In the light most favorable to the State, the evidence shows that Officer Walters, who was working undercover, told the appellant he wanted to purchase $10 worth of cocaine. The appellant agreed to help and got into Officer Walters' car. The appellant first tried to exchange the buy money at a store, in an apparent attempt to prevent police from possibly later identifying previously photocopied buy money. When Officer Walters thwarted his efforts to evade subsequent detection, the appellant made a call and asked for a "dime." The appellant then directed Officer Walters to a house. The appellant went inside the house then returned to the car. The appellant told Officer Walters that he could not get the drugs because of "vice." He returned a $1 bill to Officer Walters instead of the $10 bill he had been handed by Officer Walters. When Officer Walters protested, the appellant told him that he had the drugs. The appellant directed Officer Walters to a location within 1,000 feet of a school zone. There, the appellant handed Officer Walters .03 grams of crack cocaine. This proof sufficiently establishes the sale of a controlled substance.

Regarding the appellant's claim that he was guilty of casual exchange instead of the sale of cocaine, we note that casual exchange generally "contemplates a spontaneous passing of a small amount of drugs, for instance, at a party. Money may or may not be involved." State v. Copeland, 983 S.W.2d 703, 708 (Tenn. Crim. App. 1998). This court has previously explained that

> "[w]hether a transfer is a casual exchange is to be determined
> from all the facts and circumstances of the case. Facts and
> circumstances indicating that the transaction is not a casual
> exchange include a lack of evidence that the defendant gave the
> drugs to the buyer out of friendship or as a friendly gesture, no

evidence reflecting anything other than a pecuniary motive for the transfer of the drugs, no prior relationship between the defendant and the buyer, and no reason for the defendant and the buyer to be together, other than for the buyer to purchase drugs."

State v. Bernard Miguel Wallace, No. W2004-02124-CCA-R3-CD, 2006 WL 16315, at *4 (Tenn. Crim. App. at Jackson, Jan. 3, 2006) (citations omitted) (quoting State v. Donald L. Haynes, No. E2000-00672-CCA-R3-CD, 2001 WL 416729, at *4 (Tenn. Crim. App. at Knoxville, Apr. 24, 2001)). In the instant case, there was no proof of a friendship or friendly relationship between the appellant and Officer Walters, and there was no proof of a motive for the transfer of drugs that was not pecuniary. Moreover, the jury was instructed on casual exchange. The jury, acting in its purview, reviewed the evidence and found the appellant guilty of the sale of crack cocaine. This issue is without merit.

### III. Conclusion

In sum, we conclude that the evidence is sufficient to support the appellant's conviction. Therefore, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-6-