# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 3, 2013

## STATE OF TENNESSEE v. ERNEST JACKSON

**Appeal from the Circuit Court for Madison County**
**No. 12-292     Donald H. Allen, Judge**

---

**No. W2013-00348-CCA-R3-CD  - Filed January 9, 2014**

---

Ernest Jackson ("the Defendant") was convicted by a jury of sale and delivery of less than 0.5 grams of cocaine and possession of drug paraphernalia. Following a sentencing hearing, the trial court merged the Defendant's conviction for delivery of cocaine into his conviction for sale of cocaine and sentenced the Defendant to an effective sentence of fifteen years' incarceration. On appeal, the Defendant challenges the sufficiency of the evidence supporting his convictions for sale and delivery of cocaine. After a thorough review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Ernest Jackson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

A Madison County Grand Jury indicted the Defendant on one count each for sale of 0.5 grams or more of cocaine, delivery of 0.5 grams or more of cocaine, and possession of drug paraphernalia. The Defendant proceeded to a jury trial on September 25, 2012.

Sergeant Phillip Kemper with the Jackson Police Department ("JPD") testified that, at the time of trial, he had been assigned to the Gang Enforcement Team ("the Team") for seven years. The Team served to "investigate narcotics and firearm cases in high crime areas where gang activity is present." On November 9, 2011, he was working undercover with Lieutenant Paul Thomas to purchase "street level narcotics in different areas of Jackson."

On that evening, Sergeant Kemper and Lieutenant Thomas were sitting in a white Dodge truck at the corner of Preston Street and Preston Alley. Sergeant Kemper was sitting in the driver's seat. An individual (not the Defendant) had told Sergeant Kemper that he could set up a cocaine purchase for Sergeant Kemper at this location. Sergeant Kemper identified this area as "a high drug trafficking area for street level narcotics." Shortly after 8:00 p.m., the Defendant, identified by Sergeant Kemper at trial, approached the driver's side window and handed Sergeant Kemper "two small rocks" of what Sergeant Kemper believed to be crack cocaine in exchange for four, ten dollar bills. Although other officers were not in sight at the time of the purchase, Sergeant Kemper notified officers as they drove away regarding the Defendant's description, and other officers immediately arrived and took the Defendant into custody. Sergeant Kemper agreed that he and Lieutenant Thomas did not participate in the Defendant's arrest.

Sergeant Kemper confirmed that, although he and the Defendant did not discuss the amount of cocaine he was purchasing, he received the amount of crack cocaine that he believed he would receive based on payment of $40. He identified a picture of the Defendant taken on the night of this purchase.

Sergeant Kemper stated that the money he used to purchase the crack cocaine was from a drug fund through the JPD. In order to track the cash, the officers customarily photocopied the dollar bills, as they did in this case. Sergeant Kemper identified at trial photographs of the money he used in his transaction with the Defendant and stated that he reacquired possession of that money later that evening. Sergeant Kemper relinquished the purchased material to Investigator Anderson. He noted that the "two rocks" were not in any packaging. At the time he relinquished the purported crack cocaine, he retrieved the cash he had used in the purchase.

Sergeant Kemper confirmed that he employed a surveillance video and audio recording during the transaction with the Defendant. He explained that the video was completely dark because of the location and the lack of lighting but that it recorded all of the audio. He stated that no one was with the Defendant when he provided the purported crack cocaine to the officers.

On cross-examination, Sergeant Kemper confirmed that, on some occasions, the Team purchased narcotics from "individual targets" but that the Defendant was not one such target. He agreed that he never had seen the Defendant prior to the evening of this incident.

Lieutenant Paul Thomas with the Milan Police Department ("MPD") testified that he was a special agent with the West Tennessee Drug Task Force. On November 9, 2011, he was assisting the Team with the JPD. He stated that he was present in the passenger's seat when the Defendant sold Sergeant Kemper drugs that evening. He confirmed that the area in which this transaction occurred was a "high drug transaction area." He also confirmed that he and Sergeant Kemper were wearing street clothes and driving an undercover vehicle.

Lieutenant Thomas described the transaction as a "brief encounter" in which the Defendant handed "something" to Sergeant Kemper through the driver's side window and Sergeant Kemper gave the Defendant $40. He described the Defendant on that night as wearing a Tennessee Titans jacket and a hat. According to Lieutenant Thomas, no one else was present with the Defendant or with he and Sergeant Kemper at the time of the transaction.

On cross-examination, Lieutenant Thomas confirmed that the Defendant was not a specific target for a narcotics sale that evening. He also confirmed that he knew what a "Brillo" was and explained that it is "used as a screen or filter in a crack pipe," which is used to smoke crack cocaine.

Investigator Rodney Anderson with the JPD testified that he investigated crimes involving "gangs, drugs, violent crimes, [and] fugitives." On November 9, 2011, he was working with Sergeant Kemper and Lieutenant Thomas in undercover drug operations. Investigator Anderson's role was to conduct the arrest of the seller following each drug transaction conducted that evening. Investigator Anderson confirmed that he and another officer arrested the Defendant that evening. Although he was not present when the transaction occurred, he drove to the location immediately following the transaction and arrested the individual who matched the description given by Sergeant Kemper and Lieutenant Thomas. He identified the photograph of the Defendant also identified by Sergeant Kemper and Lieutenant Thomas as a photograph of the Defendant taken that evening.

After arresting the Defendant and searching him for weapons, they transported him to another location and searched him further. At that time, Investigator Anderson found "a little piece of Brillo pad and a crack pipe" in the Defendant's pocket. He explained that these items are used to smoke crack cocaine. He stated, "They use the Brillo pad to put inside the glass tube and then they light it up and they smoke it and it's used as a type of filter during the smoking process." Investigator Anderson identified at trial an evidence bag containing the Brillo pad and crack pipe that he found on the Defendant's person that evening. He also identified at trial an evidence bag containing the crack cocaine that he received from Sergeant Kemper.

Investigator Anderson stated that they retrieved the money used in the drug transaction beside the wall where they arrested the Defendant. They had returned to that location after searching the Defendant. Investigator Anderson surmised that the Defendant must have dropped the money. He compared the money found to the money used in the transaction by Sergeant Kemper and confirmed that it matched.

On cross-examination, Investigator Anderson acknowledged that he did not find on the Defendant's person any money, additional crack cocaine, scales, or plastic bags. He stated that, during the drug transaction, he estimated that he was parked less than half of a mile away. He confirmed that he had arrested other individuals in the past who had pipes and Brillo pads on their persons.

The State recalled Sergeant Kemper, who identified an additional photograph as a photograph of the Defendant in the hat that he wore during the drug transaction.

Brenda McNeil testified that she was the evidence technician for the Jackson Madison County Metro Narcotics Unit. She explained, "I receive the drug evidence from the arresting officers and keep it in our drug vault. I take it for testing and I bring it to court." She and her boss were the only individuals who had access to the drug vault. She identified an item at trial as an item she placed into the drug vault and then took to Memphis for testing. This item previously was identified by Investigator Anderson as the purported crack cocaine he received from Sergeant Kemper. According to McNeil, she dropped off the item on December 20, 2011, for testing and retrieved it on May 11, 2012. She believed that the item was sent to Nashville at some point. She also identified an item previously identified by Investigator Anderson as the bag containing the crack pipe and Brillo pad, which she also kept in the drug vault and brought to trial.

Special Agent Jennifer Sullivan, a forensic scientist with the Tennessee Bureau of Investigation ("TBI") Crime Laboratory in Nashville, testified as an expert in controlled substance identification. She stated that she weighed the material obtained in this case and

determined that it weighed 0.28 grams. Special Agent Sullivan confirmed, after testing the substance, that it tested positive for cocaine base, which commonly is known as crack cocaine. She explained that the reason she received this material at the Nashville laboratory was because sometimes her office helped the Memphis laboratory when the Memphis laboratory had a backlog. She received the material in this case on December 20, 2011.

At the conclusion of the State's proof, the defense moved for judgment of acquittal, which the trial court denied. The Defendant chose not to testify and presented no proof. Following deliberations, the jury found the Defendant guilty of sale and delivery of less than 0.5 grams of cocaine and possession of drug paraphernalia and fined the Defendant a total of $11,000. At the sentencing hearing, the trial court merged the Defendant's conviction for delivery of cocaine into his conviction for sale of cocaine. The trial court sentenced the Defendant as a Range III, persistent offender, to fifteen years for his conviction of sale of cocaine and eleven months, twenty-nine days for his conviction of possession of drug paraphernalia. The court ordered that the sentences run concurrently, for a total effective sentence of fifteen years' incarceration. Because the trial court merged the convictions for delivery and sale of cocaine, the trial court reduced the Defendant's imposed fine to $6,000. The Defendant filed a motion for new trial, which the trial court subsequently denied. He timely appealed, challenging the sufficiency of the evidence supporting his convictions for sale and delivery of cocaine.

## Analysis

*Sufficiency of the Evidence*

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts

based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our supreme court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Furthermore, it is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

Although the trial court merged the Defendant's convictions for sale and delivery of cocaine, we will consider the sufficiency of the evidence as to both convictions in order to facilitate further potential appellate review. In Tennessee, "[i]t is an offense for a defendant to knowingly . . . [d]eliver a controlled substance[] [or] [s]ell a controlled substance." Tenn. Code Ann. § 39-17-417(a)(2),(3) (2010). Tennessee statute defines "deliver" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6) (2010). Cocaine is classified as a Schedule II drug, see Tenn. Code Ann. § 39-17-408(b)(4) (2010), and sale or delivery of less than 0.5 grams of cocaine is a Class C felony. See Tenn. Code Ann. § 39-17-417(c)(2)(A).

The State presented ample evidence for the jury to convict the Defendant of both sale and delivery of cocaine. The testimony at trial established that on November 9, 2011, Sergeant Kemper and Lieutenant Thomas had arranged with an individual to buy cocaine from someone at the corner of Preston Street and Preston Alley. Upon their arrival, the Defendant approached their vehicle and handed Sergeant Kemper "two small rocks" in exchange for $40 cash from Sergeant Kemper. Sergeant Kemper confirmed at trial that he received the amount of purported crack cocaine that he would expect to receive for $40. Additionally, Sergeant Kemper identified the money found near the Defendant as the money he gave the Defendant in exchange for the "two small rocks." Special Agent Sullivan with the TBI confirmed, after testing this substance, that it was 0.28 grams of crack cocaine.

The Defendant argues that he should have been convicted of the lesser-included offense of simple possession or casual exchange of cocaine. See Tenn. Code Ann. § 39-17-418(a) (2010) ("It is an offense for a person to knowingly possess or casually exchange a controlled substance."). He cites to State v. Copeland, 983 S.W.2d 703, 708 (Tenn. Crim.

-6-

App. 1998), in which this Court stated, "A 'casual exchange' contemplates a spontaneous passing of a small amount of drugs, for instance, at a party. Money may or may not be involved."

Here, both Sergeant Kemper and Lieutenant Thomas testified that they never had seen the Defendant prior to their transaction with him. Moreover, as stated previously, they specifically set up this cocaine purchase through another individual. Therefore, viewing the evidence with the strongest legitimate view in favor of the State, see Harris, 839 S.W.2d at 75, we conclude that the State introduced sufficient evidence for a jury to convict the Defendant of sale and delivery of less than 0.5 grams of cocaine. Accordingly, the Defendant is entitled to no relief on this issue.

## CONCLUSION

For the reasons set forth above, we affirm the judgments of the trial court.

_____
JEFFREY S. BIVINS, JUDGE