IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2005

## STATE OF TENNESSEE v. JOHN DILLIHUNT

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S47,787     Phyllis H. Miller, Judge**

_____

**No. E2004-02691-CCA-R3-CD - Filed August 25, 2005**

_____

The defendant, John Dillihunt, was convicted of delivery of less than .5 grams of cocaine within 1000 feet of a school, a Class B felony, for which he was sentenced as a Range I, standard offender, to eight years in the Department of Correction to be served at 100% and fined $7500.[1]  On appeal, although the defendant raises four issues, we believe they can be condensed into one:  whether the evidence was sufficient to support his conviction.  Following our review, we affirm the judgment of the trial court but remand for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and Remanded for Entry of a Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Nat H. Thomas, Kingsport, Tennessee, for the appellant, John Dillihunt.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Robert H. Montgomery, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

_____

[1]The judgment shows the defendant's conviction offense as sale, rather than delivery, of cocaine within 1000 feet of a school.  At the defendant's motion for new trial hearing, the trial court noted the discrepancy and requested the State to have the judgment form amended to show the correct charge.

On July 29, 2003, the Sullivan County Grand Jury charged the defendant with delivery of less than .5 grams of cocaine within 1000 feet of a public school,[2] as a result of the defendant's delivery of cocaine to an undercover drug task force officer on September 3, 2002, at the Lee Apartments in Kingsport, Tennessee. The delivery took place within 1000 feet of the New Horizon School, a public school.

The State's first witness was Jake White, the manager of the City of Kingsport Geographic Information System Division, who testified that the Division produces maps for the City of Kingsport. He identified a map from the Sullivan County Property Assessor's Office showing the one-thousand-foot boundary around the New Horizon School. White testified that the Lee Apartments, where the defendant delivered cocaine to the undercover drug task force officer, were located approximately 720 feet from the New Horizon School property.

David Carper, Director of Facility Management with the Kingsport City Schools, testified that on September 3, 2002, the New Horizon School was utilized by the Kingsport City Schools to teach mid school and high school students.

Bristol Tennessee Police Department Agent Eddie Nelson testified that he worked undercover with the Second Judicial District Drug Task Force. Agent Nelson testified that on September 3, 2002, at approximately 7:30 p.m. he went to an alley located at the back of a house at 750 Myrtle Street in Kingsport with a confidential informant for the purpose of purchasing crack cocaine. To record the transaction, Nelson had in his vehicle a digital tape recorder and a transmitter that went out to other receivers that were recording.

Agent Nelson testified that he stayed in his car while the confidential informant knocked on the back door of the house. When no one answered, the informant went around to the front of the house and then came back to the car with Kenyetta Moore. The officer said at this time he did not know what Ms. Moore's name was. Agent Nelson testified that Ms. Moore got into the backseat of his car and "told [him] where [he] could go to get the cocaine" and used Nelson's cell phone to make a call that lasted less than one minute. Following Ms. Moore's directions, Nelson left the Myrtle Street house and drove a short distance to the Lee Apartments, where he parked his car outside Apartment No. 8. He said he gave Ms. Moore "a hundred dollars, she got out of the vehicle and went to Apartment 8 and she was in there I'd say one to two minutes and she come back out with [the defendant] and they both got in the back of my vehicle." Agent Nelson described how he obtained the crack cocaine after Ms. Moore and the defendant got into his car:

Q.    Okay. All right, now if you would, tell us what happened next.

---

[2] The presentment originally charged the defendant with sale and delivery of less than .5 grams of cocaine within 1000 feet of a school but was amended by the trial court on April 20, 2004, to reflect the correct charge of delivery of less than .5 grams of cocaine within 1000 feet of a school.

A.      I observed Ms. Moore hand [the defendant] some, what appeared to be little white rocks in a plastic wrap. In turn [the defendant] at that time had his hand cupped over like that, kind of down so I couldn't see.

Q.      All right. Now, just for the record, you have your hand up in the air, your fingers are down and your fist is closed.

A.      Yeah, and got -- and handed, got his other hand, gave me two rocks, he still appeared to have some more in his hand and gave those two to me. It wasn't up like this, this was down basically in the floorboard.

Q.      But for the record I mean you were just describing what he did?

A.      Yeah.

Q.      Did you look at what you had received from [the defendant]?

A.      I looked at it briefly, it looked like crack cocaine.

Asked about any conversation between Ms. Moore and the defendant, Agent Nelson testified that "[d]uring this passing between Ms. Moore and [the defendant], Ms. Moore said 'Forty,' [the defendant] said 'Forty,' and then that's basically when he gave the two to me." Agent Nelson identified the tape recordings of the transaction, which were played before the jury and admitted as an exhibit in the case. Asked what he thought the word "Forty" meant, Agent Nelson testified that he "took it as $40.00 worth of product, crack cocaine."

After receiving the crack cocaine, Agent Nelson dropped both the defendant and Ms. Moore off at the alley behind the house on Myrtle Street. Nelson testified that he left without waiting to see where the defendant or Ms. Moore went. The crack cocaine was put in a safe at the Second Judicial Drug Task Force office until logged into evidence with the Kingston Police Department on October 21, 2002.

Tennessee Bureau of Investigation Special Agent Forensic Drug Chemist David Holloway testified that he analyzed the two rock substances submitted by Agent Nelson and determined together they contained a total amount of .2 grams of cocaine. On cross-examination, Agent Holloway acknowledged that .2 grams of cocaine was a small amount when compared to an ounce.

The defendant elected not to testify and presented no evidence.

After deliberating, the jury found the defendant guilty of delivery of less than .5 grams of cocaine within 1000 feet of a school and set a $7500 fine. Following the denial of his motion for a new trial, the defendant filed a timely appeal to this court.

# ANALYSIS

## Sufficiency of the Evidence

The defendant contends the evidence was insufficient to sustain the jury's verdict. In support of this contention, the defendant makes two claims: (1) that Agent Nelson should have ascertained whose phone number Ms. Moore called when using the agent's phone; and (2) that Agent Nelson should have determined who the leasee was for Apartment No. 8 at the Lee Apartments. The defendant contends the telephone record and the name of the leasee of the apartment would have been exculpatory in nature and mitigated his involvement. In addition, he argues the evidence, at most, was sufficient only to convict him of criminal responsibility for facilitation of a felony or, in the alternative, simple possession or casual exchange.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State ." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To establish the defendant's guilt of the offense, the State had to prove that the defendant knowingly delivered less than .5 grams of cocaine within 1000 feet of a school. See Tenn. Code Ann. §§ 39-17-417(a)(2), (c)(2) (Supp. 2004); 39-17-432 (2003). "Deliver" or "delivery" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Id. § 39-17-402(6) (2003).

Agent Nelson's testimony shows an actual transfer of crack cocaine from the defendant to the agent. There was uncontroverted testimony that the delivery took place within 1000 feet of the New Horizon School. The defendant does not establish how he would have been aided by the jury's knowing to whom the phone number belonged or to whom Apartment No. 8 was leased. Likewise, the defendant does not explain why he did not subpoena the phone records to find out this information. The evidence in this case clearly supports the jury's verdict.

Further, the defendant contends he should have been found guilty of facilitation of a felony instead of delivery of cocaine. Tennessee Code Annotated section 39-11-403(a) states that "[a] person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." In support of this contention, the defendant points out that he never received any of the $100 that Agent Nelson gave to Ms. Moore. However, the defendant does not cite any authorities requiring the delivery of cocaine to include an exchange of money. A plain reading of Tennessee Code Annotated section 39-17-417 provides that a defendant can be guilty of delivery of cocaine or sale of cocaine. See Tenn. Code Ann. § 39-17-417(a)(2), (3). If we read into the definition of delivery a requirement that money must be exchanged, it could effectively do away with a separate "delivery" charge.

In the alternative, the defendant contends he should have been convicted of casual exchange instead of delivery. Tennessee Code Annotated section 39-17-418 states that "[i]t is an offense for a person to knowingly possess or casually exchange a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Tenn. Code Ann. § 39-17-418(a). In support of his argument, the defendant notes there is no evidence that he ever talked to Ms. Moore on the phone, that he ever possessed the $100 Agent Nelson gave Ms. Moore, or that he lived at Apartment No. 8. He also argues that the drug task force was targeting Ms. Moore and not him. We find these arguments without merit. Casual exchange "contemplates a spontaneous passing of a small amount of drugs, for instance, at a party. Money may or may not be involved." State v. Copeland, 983 S.W.2d 703, 708 (Tenn. Crim. App. 1998). Agent Nelson went to the Myrtle Street house with the purpose of purchasing crack cocaine. Ms. Moore took Nelson to Apartment No. 8 where the defendant was located. The agent saw Ms. Moore hand the defendant what appeared to be crack cocaine and the defendant, in turn, handed two rocks of cocaine to Agent Nelson. These facts simply do not show a "spontaneous" exchange.

## CONCLUSION

Based on our review of the record, we conclude that the evidence was sufficient to sustain the defendant's conviction for delivery of less than .5 grams of cocaine within 1000 feet of a school. Accordingly, we affirm the judgment of the trial court but remand for entry of a corrected judgment to reflect the defendant's conviction offense as delivery of less than .5 grams of cocaine within 1000 feet of a school.

_____
ALAN E. GLENN, JUDGE