IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 15, 2009

## MICHAEL BRANHAM v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 263911      Rebecca J. Stern, Judge**

_____

**No. E2009-00775-CCA-R3-PC - FILED JUNE 17, 2010**

_____

The Petitioner, Michael Branham, appeals the Hamilton County Criminal Court's denial of his petition for post-conviction relief from his conviction upon a guilty plea for aggravated assault, a Class C felony, for which he received a three-year sentence with split confinement. He contends that the proof at the post-conviction hearing established that he received the ineffective assistance of counsel, that the trial court failed to review the post-conviction hearing evidence under the standard established in United States v. Cronic, 466 U.S. 648 (1984), and that the trial court committed plain error when it failed to address the issue of prosecutorial misconduct. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Robin Ruben Flores, Chattanooga, Tennessee, for the appellant, Michael Branham.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; and William H. Cox, III, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This is the Petitioner's second appeal. This court previously remanded the case for entry of findings of fact and conclusions of law, and the present appeal resulted. In the first appeal, this court summarized the facts as follows:

[T]he [Petitioner] and the [victim] were having a disagreement over something, and the [victim] was subsequently shot in the ankle by [Petitioner]. . . . The victim, Jamaal Townsend, initially insisted that he did not know his shooter, claiming he was only a bystander to a dispute. However, he later told police he participated in the fight and knew his shooter. The victim said that, in September 2005, he argued with Standford Steward and Petitioner at a nightclub. After the victim struck Steward, Steward threatened to shoot the victim. The victim, however, left the club, returned home, retrieved his revolver, and went to his sister's apartment in a housing project.

As the victim walked through a field connecting the project's housing buildings, he came upon Steward and Petitioner. The record contains conflicting statements about what happened next. According to Steward, the victim grasped Steward's neck with one hand and waived a gun with the other hand. Petitioner then began to shoot the victim. However, according to the victim, Petitioner simply started firing at him as soon as he and Steward began to argue again, and one of the shots hit him in the ankle. The victim said he fired five shots at Petitioner and Steward as they fled.

Michael Branham v. State, No. E2008-00404-CCA-PC, Hamilton County, slip op. at 2 (Tenn. Crim. App. Jan. 23, 2009).

The Petitioner was charged with attempted first degree murder and aggravated assault. Pursuant to a plea agreement, the State dismissed the attempted first degree murder charge in exchange for the Petitioner's plea of guilty to aggravated assault.

The Petitioner filed a pro se petition for post-conviction relief, which he later amended with the assistance of appointed counsel. He contended that his trial counsel had been per se ineffective because she failed to subject the prosecution to the adversarial process in any form. He also contended that he would not have pled guilty had he known about the victim's conflicting statements, which he argued counsel should have obtained through investigation or discovery. Finally, he argued that he was denied substantive due process because the State failed to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).

The testimony at the post-conviction hearing was also summarized by this court in the Petitioner's first appeal:

> At the post-conviction hearing, Petitioner testified that he pled guilty based on Counsel's advice. He explained that, after he pled guilty, federal prosecutors brought charges against him and that his federal defender obtained and showed him several witness statements gathered during the State's investigation of the shooting. Petitioner then introduced the statements into evidence.
>
> Petitioner said the statements showed the victim first told police he did not know his shooter, but, after the police agreed to drop warrants then pending against the victim, the victim identified Petitioner as the shooter. He said that Counsel had never shown the statements to him and that he, therefore, pled guilty without knowing of their existence. Petitioner testified he would not have pled guilty had he known of the statements because the statements contained information that would impeach the victim's testimony.
>
> On cross-examination, Petitioner said that, before pleading guilty, he read the plea papers and agreed that he was guilty "based upon the facts of what [Counsel] had discussed with [him]." Also, he conceded that, although the victim's statements conflicted, Steward's statement corroborated the victim's second statement, which implicated Petitioner. Further, he conceded the victim explained in his second statement that he did not originally identify the shooter because he was scared.
>
> Counsel testified she entered into an agreed order of discovery with the State in January 2006, but the State never disclosed the witness statements at issue. She said the first time she saw the statements was after Petitioner filed his petition for post-conviction relief. Counsel testified that the victim's testimony would have been the most crucial evidence in the prosecution of Petitioner and admitted she was aware, before the plea hearing, that the victim was reluctant to identify the shooter. She attributed his reluctance, however, to the gang-related nature of the shooting. Counsel reiterated that she

was aware only of the victim's reluctance and not of his specific statement denying knowledge of the shooter.

Explaining why she did not interview Steward, Counsel said the State suggested a plea deal in May 2006 although the case was not to be tried until September 2006. Therefore, she had not completed her investigation of the shooting when she advised Petitioner whether to accept the plea deal. She testified she told Petitioner "the State's case was crap" because she did not believe the State could procure the victim as a witness. She said Petitioner "wanted very much to get out of jail" and accepted the plea deal.

Asked whether she would advise Petitioner to accept the plea deal had she known of the witnesses' statements later disclosed, she said,

> The charge was attempted first degree murder. I think at trial the State wouldn't have been able to prove that. But this was a greatly reduced offer of three years, split confinement, got him out of jail. I would have advised him that a trial is always a crap shoot. That if you get a victim up there that's going to testify that he was afraid of [Petitioner] because of some gang activity so therefore he didn't want to talk to the police, but then later went and talked to the police, I think he could have been taking a big risk going to trial.

On cross-examination, Counsel testified she believed the State had an "open-door policy" with respect to discovery, which meant the State allowed a defendant or his representative to freely examine the State's file on the defendant. She recalled that, when she went to the State's office, the prosecutors showed and explained all the documents they possessed but that, at that time, the State did not possess Petitioner's "entire case file." Also, she agreed that "in regard to all the circumstances" the plea deal was good for Petitioner.

-4-

On redirect-examination, Counsel testified that, had the State later obtained the statements and, without disclosing them to her, introduced them at trial, she would have "fought like hell" to have them excluded. On recross-examination, she agreed that, although she had not completed her investigation, to prevent Petitioner from pleading guilty would have been "unethical," given the nature of the deal and Petitioner's desire to accept it.

Michael Branham, slip op. at 2-4. The trial court dismissed the petition.

The Petitioner appealed, and this court remanded the case and ordered the trial court "to enter an order or written memorandum addressing all grounds presented, with findings of fact and conclusions of law as required by the Post-Conviction Procedure Act." Id., slip op. at 5. After this court's remand of the case, the trial court filed a memorandum in which it dismissed the Petitioner's petition for post-conviction relief. The trial court discredited the Petitioner's claim that if he had known about the victim's conflicting statements, he would not have pled guilty. The court also noted trial counsel's consideration that going to trial to attack the victim's credibility through prior inconsistent statements, which the victim said resulted from his fear of the Petitioner, would not have achieved a favorable result for the Petitioner. The court found that trial counsel's performance was not deficient regarding the alleged failure to seek disclosure of, to obtain, or to inform the Petitioner of the witnesses' statements because trial counsel had examined the prosecutor's incomplete file and was aware of the victim's reluctance to testify. The court found no clear and convincing evidence of a Brady violation because the evidence of the witnesses' statements was not material, given that the Petitioner was willing to plead guilty despite counsel's assessment that the State's case was weak.

**I**

The Petitioner contends that the evidence at the post-conviction hearing established that trial counsel was per se ineffective because counsel failed to subject the State to the adversarial process. He claims the trial court should have assessed the ineffective assistance of counsel issue pursuant to United States v. Cronic, 466 U.S. 648 (1984). Alternatively, the Petitioner argues that the evidence established that he received ineffective assistance under the standard established in Strickland v. Washington, 466 U.S. 688 (1984), because counsel did not investigate the case and failed to discover or obtain the victim's conflicting statements. He argues that the district attorney general's statement that the State gave the Defendant "everything he had" implied that there might be exculpatory material located

elsewhere. The State contends that the trial court correctly denied post-conviction relief because the petitioner failed to prove his claims by clear and convincing evidence.

The burden in a post-conviction proceeding is on the Petitioner to prove his allegations of the fact supporting his claims of counsel's deficiency by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006); Dellinger v. State, 279 S.W.3d 282, 294 (Tenn. 2009). Once a petitioner establishes the fact of counsel's deficiency, the trial court must determine whether the errors resulted in the ineffective assistance of counsel. Dellinger, 279 S.W.3d at 293; see Strickland, 466 U.S. at 687-88, 694.

On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

In Cronic, the United States Supreme Court held that when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, a presumption arises that the adversarial process was unreliable. Thus, the Petitioner is not required to demonstrate prejudice. 466 U.S. at 658-59. In Williams v. Taylor, the Supreme Court confirmed the vitality of this "per se" approach noting that while the Strickland test for ineffective assistance of counsel requiring proof of deficient performance and prejudice provides guidance for resolving virtually all ineffective assistance of counsel claims, there are "a few situations in which prejudice may be presumed." Williams, 529 U.S. 362, 391 (2000).

In this case, the trial court evaluated the claim of ineffective assistance of counsel under the test established in Strickland. It determined that counsel's failure to obtain or inform the Petitioner of the victim's conflicting statements was not attributable to deficient performance but to the State's failure to disclose the statements, despite a discovery order and an open-file policy. The court also found that trial counsel examined the prosecutor's file, which was incomplete at the time, and that she was aware of the victim's reluctance to testify against the Petitioner, which she attributed to the victim's fear of the Petitioner. Finally, the court found that counsel had not completed her investigation when the State offered a plea agreement and despite her assessment that the State's case was weak, the Petitioner accepted the offer. The court concluded that counsel's performance was not deficient.

The record reflects that trial counsel represented the Petitioner in the adversarial process. Counsel met with the Petitioner and the State's prosecutor, reviewed the files, and made an appearance at a hearing on a motion to reduce bond. Because counsel subjected the case to adversarial testing, Cronic was not the appropriate standard to apply in this case, and the trial court properly applied the Strickland test.

We conclude that the trial court properly denied post-conviction relief. The trial court found no deficiency in trial counsel's performance. Counsel had reviewed the prosecutor's file, but the prosecutor had not yet received the investigating detective's file containing the witnesses's statements. Counsel was presented with the State's plea offer months before the case was scheduled to go to trial and before counsel had completed her investigation.

-7-

Counsel informed the Petitioner that the State's case was weak, but the Petitioner agreed that he was guilty based upon the facts presented to him and entered a guilty plea. The Petitioner is not entitled to relief on this issue.

**II**

The Petitioner contends that the trial court committed plain error when it failed to address the issue of prosecutorial misconduct based upon the State's failure to provide him with the witnesses's statements. The State contends that the trial court addressed the issue in its memorandum. We agree with the State.

Every criminal defendant "has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment." State v. Ferguson, 2 S.W.3d 912, 915 (Tenn. 1999). In Brady, the United States Supreme Court held that the prosecution has a constitutional duty to furnish an accused with exculpatory evidence pertaining to either the accused's guilt or innocence or the punishment that may be imposed. 373 U.S. at 87. Failure to reveal exculpatory evidence violates due process when the evidence is material either to guilt or punishment, irrespective of the prosecution's good faith. Id. Evidence that is "favorable to the accused" includes evidence that is deemed to be exculpatory in nature and evidence that could be used to impeach the State's witnesses. State v. Walker, 910 S.W.2d 381, 389 (Tenn. 1995); State v. Copeland, 983 S.W.2d 703, 706 (Tenn. Crim. App. 1998); see also United States v. Bagley, 473 U.S. 667, 676 (1985).

The "prosecution is not required to disclose information that the accused already possesses or is able to obtain." State v. Marshall, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992). Also, although the State is not obligated to disclose the entirety of the investigatory police work in a case, the State is required to disclose all favorable evidence obtained by any person acting on the government's behalf. See Strickler v. Greene, 527 U.S. 263, 275 n.12 (1999) (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995)); Walker, 910 S.W.2d at 389 (quoting Moore v. Illinois, 408 U.S. 786, 795 (1972)).

The Tennessee Supreme Court has held that in order to establish a Brady violation, four elements must be shown by the defendant:

> (1) that the defendant requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
>
> (2) that the State suppressed the information;

-8-

(3) that the information was favorable to the accused; and

(4) that the information was material.

State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995); see also Walker, 910 S.W.2d at 389.

Evidence is considered material only "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Edgin, 902 S.W.2d at 390 (quoting Kyles, 514 U.S. at 433). The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. Kyles, 514 U.S. at 434.

Contrary to the Petitioner's claim, the record reflects that the trial court addressed the alleged prosecutorial misconduct in its memorandum. The court concluded that the Petitioner had not proved a Brady violation because he had not shown that the undisclosed evidence was material. The trial court found:

> The petitioner testified that he pled guilty on counsel's advice and without knowledge of the existence of the victim's conflicting statements. He admitted that, before pleading guilty, he read the plea papers and agreed that he was guilty based upon the facts he discussed with counsel. He conceded that, although the victim's statements conflicted, the statement implicating him, which also attributed the victim's initial failure to identify the shooter to fear, was corroborated by another witness's statement.
>
> . . .
>
> The petitioner's willingness to plead guilty despite counsel's assessment of the weakness of the state's case belies his insistence that, had he known of the conflicting statements, he would not have pled guilty. Counsel testified that, had she known of the conflicting statements, she would have advised the petitioner that a trial is always a risk and the risk could be big if the victim testified and attributed his initial failure to talk to police to fear of the petitioner "because of some gang activity." Her testimony in this respect reflects that, had the victim decided to identify the shooter and testify against the petitioner,

the petitioner would have had more, not less, reason to plead guilty than he already had.

We conclude that the record does not preponderate against the trial court's determination that no <u>Brady</u> violation occurred. The Petitioner failed to show that if he had received the victim's statements, the result of the proceeding would have been different. Thus, the evidence was not material. The Petitioner is not entitled to relief on this issue.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE