IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 5, 2014

**RONNIE WOODALL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 04-01377     W. Otis Higgs, Judge**

---

**No. W2012-02005-CCA-R3-PC  - Filed May 5, 2014**

---

The petitioner, Ronnie Woodall, appeals the denial of his petition for post-conviction relief, which challenged his Shelby County Criminal Court jury conviction of rape of a child.  In this appeal, the petitioner contends that he was deprived of the effective assistance of counsel at trial, that the State failed to disclose favorable evidence, and that the post-conviction court erred by failing to address each of the issues raised in the petition for post-conviction relief. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Ronnie Woodall, Pikeville, Tennessee, pro se (on appeal); and Juni Ganguli, Memphis, Tennessee (at hearing), for the appellant, Ronnie Woodall.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Shelby County Criminal Court jury convicted the petitioner of one count of rape of a child for his 2002 assault on the 12-year-old victim.  At the defendant's trial, the victim testified that the defendant, her father, "got on top of her when she tried to get out of the bed" and "then placed his penis in her vagina and did not use a condom." *State v. Ronnie Woodall*, No. W2004-02358-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, Sept. 12, 2005), *perm. app. denied* (Tenn. Feb. 6, 2006).  The victim reported that the defendant

gave her $5.00 and a necklace after the incident and warned her not to tell anyone. *See id.*, slip op. at 2. The victim reported the rape to her mother as soon as her mother returned home from work, and the victim's mother took her to the hospital. According to the victim's mother, when confronted about the allegations, the defendant said, "'I'm sorry, I didn't mean to do that.'" *Id.* The forensic examination of the victim revealed a "hematoma to the hymen, indicative of unwanted sexual penetration" that had occurred within the 24 hours before the examination. *Id.* During an interview with the police, the defendant admitted having sex with the victim and offering her gifts. The defendant testified that, due to his level of intoxication, he had no recollection of having sex with the victim. *Id.*, slip op. at 3.

This court affirmed the petitioner's conviction and accompanying 22-year sentence on direct appeal. *Id.*, slip op. at 1, 8. Following the denial of his application for permission to appeal to the supreme court, the petitioner filed a timely petition for post-conviction relief, alleging, among other things, that he was deprived of the effective assistance of counsel both before and during the trial; that his 22-year sentence is unconstitutional; that his sentence was excessive; and that his conviction was the product of a coerced confession and the use of illegal evidence. The petitioner, with the aid of counsel, also filed two amended petitions that clarified his claim of ineffective assistance of counsel and that added a claim that the State failed to disclose exculpatory evidence. The petitioner also moved for deoxyribonucleic acid ("DNA") testing of evidence collected during the victim's forensic examination pursuant to Tennessee Code Annotated sections 40-30-303 and 40-30-304.

At the July 2, 2012 evidentiary hearing, post-conviction counsel effectively abandoned the majority of the petitioner's claims for post-conviction relief and alleged only that the petitioner had been deprived of the effective assistance of counsel, claiming specifically that counsel failed to adequately inform him of the strength of the State's case and that counsel's failure to "develop[] any sort of relationship with him" led counsel to erroneously encourage the petitioner to testify at trial. Counsel stated that it was the petitioner's opinion that had he been appropriately apprised of the strength of the State's case he would have pleaded guilty and that had counsel developed an adequate relationship with the petitioner he would have been aware that the petitioner would fare poorly during cross-examination.

Trial counsel testified that the petitioner told him that the petitioner had no recollection of either the rape or his confession because he was so intoxicated on cocaine and alcohol. Counsel noted that the petitioner's three-page confession contained great detail about the assault. Counsel stated that despite his claiming to have been in a drug-induced blackout from before the assault until after he gave his confession, the petitioner was able to provide great detail about other events that transpired during that time frame. Counsel said

that he "had no expert to back up [the petitioner's] story." He explained that the expert who conducted the petitioner's forensic evaluation explained that if the petitioner had truly been in a blackout, he would have forgotten the entire week and "wouldn't just forget bits and pieces of it that are convenient to forget." Counsel testified that he explained to the petitioner that if the petitioner's defense was to be that the petitioner was "in a blackout" when the offense occurred, that the petitioner would need to testify to get that fact before the jury.

Counsel recalled that he managed to get the State to accept a plea agreement that would have resulted in the petitioner's serving a 13.5-year sentence and that he counseled the petitioner to accept the agreement based upon the strength of the State's case. Counsel recalled that the petitioner did not want to accept the offer because he did not "know if it happened or not" and because he did not "think he would" have sex with his daughter. Counsel said that he stressed to the petitioner that a jury would be repulsed by the facts of the case. Counsel stated that he also emphasized to the petitioner that there really was no viable defense to the charges. Despite counsel's exhortations, the petitioner decided to reject the offer.

Counsel said that as part of his trial preparation, he subjected the petitioner to mock cross-examination so that the petitioner would "have some idea of what [he was] going to come up against." He stated that he had no idea that the petitioner would testify that he "could have" committed the rape of the victim.

The petitioner testified in the evidentiary hearing that his statement to the police wherein he admitted having sex with the victim was "false." He insisted that he did not tell the police that he had raped the victim and that the police officers had lied. The petitioner also insisted that he never told his trial counsel that he was "in a blackout" when both the offense and the statement occurred. The petitioner said that counsel failed to inform him of the potential punishment for a conviction of rape of a child until "like a week or two before trial or something." The petitioner also said that he "refused to testify" until "the last minute," when counsel asked him to testify. The petitioner maintained that counsel did not prepare him to testify and that counsel's testimony otherwise was a lie. He insisted that counsel's failure to prepare him to testify resulted in his performing poorly during cross-examination.

During cross-examination, the petitioner claimed that trial counsel performed deficiently by failing to "call any of [his] witnesses" and by failing to object to things "that the prosecutor was doing wrong in the trial on my behalf." The petitioner said that he and the trial judge had "never seen eye to eye on things" and that they "had problems" that led to the trial judge's being unable to do his job fairly. The petitioner acknowledged that

-3-

counsel could not prepare him to appear truthful on the stand when he was not, in fact, being truthful.

The post-conviction court denied relief via written order, concluding that the petitioner had failed to establish his claims by clear and convincing evidence. In the written order, the post-conviction court addressed each of the claims raised in the written petitions for relief. Because it is our view that the petitioner abandoned all claims except those addressed at the evidentiary hearing, we confine our summary of the post-conviction court's order to those claims. With regard to the petitioner's claim that counsel failed to adequately explain the ramifications of rejecting the plea offer, the post-conviction court accredited counsel's testimony that he thoroughly explained to the petitioner the potential punishment he faced should he be convicted at trial and how the facts of the case would be perceived by a jury. With regard to the petitioner's claim that counsel should not have permitted him to testify at trial, the post-conviction court found that although the petitioner "realizes, in retrospect, that his choice [to testify] may not have been the best one is not grounds for an ineffective assistance of counsel claim."

In this appeal, the petitioner, now proceeding pro se at his own request, reiterates his claim of ineffective assistance of counsel, adds a claim that the State withheld favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and claims that the post-conviction court erred by failing to address all of the claims raised. The State asserts that the post-conviction court properly denied relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A.§ 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

## I. *Brady v. Maryland*

The petitioner claims entitlement to post-conviction relief on grounds that the State violated the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to "'surrender the DNA evidence to him during pretrial discovery request'[] nor during this court's direct appellate review[] of his conviction and sentence." The petitioner

acknowledges that his post-conviction counsel failed to address this issue at the evidentiary hearing. The State asserts that because the petitioner failed to present any evidence to support his claim at the evidentiary hearing, the post-conviction court correctly ruled that the petitioner had failed to establish entitlement to post-conviction relief on this ground.

The constitutional right to a fair trial imposes upon the State "duties consistent with the[] sovereign obligation to ensure 'that justice shall be done' in all criminal prosecutions." *Cone v. Bell*, 556 U.S. 449, 451 (2009) (quoting *United States v. Agurs*, 427 U.S. 97, 111 (1976) (citation and internal quotation marks omitted)). In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "Evidence 'favorable to an accused' includes evidence deemed to be exculpatory in nature and evidence that could be used to impeach the [S]tate's witnesses." *Johnson v. State*, 38 S.W.3d 52, 55-56 (Tenn. 2001) (citing *State v. Walker*, 910 S.W.2d 381, 389 (Tenn. 1995); *State v. Copeland*, 983 S.W.2d 703, 706 (Tenn. Crim. App. 1998); *United States v. Bagley*, 473 U.S. 667, 676 (1985)). The duty to disclose exculpatory evidence extends to all "favorable information" irrespective of whether the evidence is admissible at trial. *State v. Robinson*, 146 S.W.3d 469, 512 (Tenn. 2004) (appendix); *Johnson*, 38 S.W.3d at 56. *Brady* and its progeny create in the "individual prosecutor . . . a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

To prove a *Brady* violation, a defendant must demonstrate:

(1) that he requested the information (unless the evidence is obviously exculpatory, in which case the [S]tate is bound to release the information whether requested or not),

(2) that the State suppressed the information,

(3) that the information was favorable to the defendant, and

(4) that the information was material.

*Johnson*, 38 S.W.3d at 56 (citing *State v. Edgin*, 902 S.W.2d 387, 390 (Tenn. 1995); *Walker*, 910 S.W.2d at 389); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have

ensued."). The evidence is deemed material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'

*Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). Plainly stated, establishing materiality requires a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435; *see Johnson*, 38 S.W.3d at 58.

As the State points out, and the petitioner acknowledges, the petitioner failed to present any evidence to support his claim that the State withheld potentially exculpatory DNA evidence. The petitioner's failure to present any proof to support this claim necessarily means that the petitioner failed to prove the claim by clear and convincing evidence, *see* T.C.A. § 40-30-110(f), and would, therefore, not be entitled to post-conviction relief on this ground. Consequently, the ruling of the post-conviction court that the petitioner had failed to establish his *Brady* claim by clear and convincing evidence was correct.

Although the petitioner claims that his post-conviction counsel performed deficiently by failing to raise this claim at the evidentiary hearing, this claim does not avail him any relief. "[B]ecause there is no constitutional right to counsel in post-conviction proceedings, we have held that 'there is no constitutional right to effective assistance of counsel in post-conviction proceedings.'" *Stokes v. State*, 146 S.W.3d 56, 60 (Tenn. 2004) (quoting *House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995)). "The United States Supreme Court has likewise held that the Fourteenth Amendment's right to counsel, and therefore right to effective assistance of counsel, only applies through the first appeal as of right." *Stokes*, 146 S.W.3d at 60 (citing *Douglas v. California*, 372 U.S. 353, 357 (1963)).

## II. Ineffective Assistance of Counsel

The petitioner contends that his trial counsel performed deficiently by failing to obtain and utilize the results of DNA testing by the State, by failing to adequately advise him to accept the State's plea offer, and by "allowing" the petitioner to testify at trial.

-6-

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the record supports the decision of the post-conviction court denying post-conviction relief because the petitioner failed to establish any of his claims by clear and convincing evidence.

*A. Failure to Obtain Exculpatory Material*

In a corollary to his *Brady* claim, the petitioner asserts that his trial counsel performed deficiently by failing to obtain that DNA evidence that the State allegedly withheld. The petitioner contends that although "counsel knew of this" evidence and "knew that such evidence" could have changed the outcome of the trial, counsel failed to utilize the evidence to the petitioner's advantage. Again, the petitioner failed to present any proof in support of this claim at the evidentiary hearing and, as such, has failed to prove his claim by clear and convincing evidence.

*B. Plea Offer*

Although the petitioner contends that counsel failed to adequately advise him to accept the plea offer from the State, counsel's accredited testimony belies this claim. Counsel testified that he worked diligently to secure a plea offer from the State that included

a Range I, 13.5-year sentence. Counsel communicated the offer to the petitioner, who was hesitant to accept and asked for more time to consider the offer and consult with his family. Counsel then secured the State's agreement to leave the offer open to allow the petitioner sufficient time to consider the offer. Counsel testified that he informed the petitioner that the petitioner faced a lengthy prison sentence if convicted at trial and that a jury would view the facts of the petitioner's case as repugnant. Counsel said that he also informed the petitioner that proceeding with the petitioner's "blackout" defense would be "an uphill battle." Under these circumstances, we cannot say that counsel performed deficiently. The decision to reject the plea offer was the petitioner's alone, and he alone must bear the consequences of that choice.

## C. Decision to Testify

Finally, the petitioner claims that trial counsel performed deficiently by "allowing [the p]etitioner to testify" at trial. Initially, we note that the decision to testify, like the decision to accept or reject a plea offer from the State, lies solely with the accused. *See generally State v. Momon*, 18 S.W.3d 152 (1999). Thus, it was not counsel's decision to permit or deny the petitioner the opportunity to testify in his own defense. Counsel's accredited testimony established that he encouraged the petitioner to testify because counsel believed that to be the only way to present the petitioner's "blackout" defense in light of the fact that he "had no expert to back up [the petitioner's] story." Counsel stated that he prepared the petitioner to testify at trial and that his preparation included subjecting the petitioner to mock cross-examination. Although the petitioner claims that counsel failed to follow the requirements of *Momon*, the post-conviction court observed that the petitioner participated in a *Momon* colloquy before taking the stand and agreed that he had made the decision to testify of his own accord. We find apt the post-conviction court's conclusion that the petitioner's realization "in retrospect, that his choice may not have been the best one is not grounds for an ineffective assistance of counsel claim."

## Conclusion

Because the petitioner has failed to establish any of his claims by clear and convincing evidence, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE